UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

TERRENCE SLATER,

              Plaintiff,

v.

J. LACAPRICCIA, ET AL.,

              Defendants.

**DECISION AND ORDER**
13-CV-1079S

## I. INTRODUCTION

In this action, pro se Plaintiff Terrence Slater alleges Eighth Amendment claims against two sets of defendants, pursuant to 42 U.S.C. § 1983. First, he alleges Eighth Amendment excessive-force claims against Defendants Jeff Lacapruccia, Mark Antinore, and John Does 1-3,[1] each of whom is a corrections officer employed at the Attica Correctional Facility. Second, he alleges Eighth Amendment deliberate-indifference-to-medical-needs claims against Defendants Sallah Abbasey, Jadow Rao, and Donna Bonning, each of whom is a medical professional at Attica.

Presently before this Court is Defendants' motion seeking partial summary judgment as it relates to the Eighth Amendment deliberate-indifference-to-medical-needs claims against Defendants Abbasey, Rao, and Bonning. (Docket No. 30.) For the following reasons, Defendants' motion is granted.

## II. BACKGROUND

At all times relevant, Slater was an inmate at Attica under the care and custody of

---

1 Slater has yet to identify these John Doe defendants. (See Docket Nos. 15, 17.)

the New York State Department of Corrections and Community Supervision ("DOCCS").[2] (Defendants' Statement of Undisputed Facts ("Defendants' Statement"), Docket No. 30-1, ¶ 1.)  Abbasey and Rao were physicians at Attica.  (Defendants' Statement, ¶¶ 3, 4.) Bonning was a registered nurse at Attica.  (Defendants' Statement, ¶ 5.)

On February 10, 2011, Slater was involved in a Use-of-Force incident, allegedly involving Defendants Lacapruccia and Antinore and other corrections officers. (Defendants' Statement, ¶ 6; Deposition of Terrence Slater ("Slater Dep."), Docket No. 30-5, pp. 35-40.)  In short, Slater alleges that the officers punched and kicked him in an unprovoked attack.  (Slater Dep., pp. 35-40, 50.)  The details of this incident make up Slater's excessive-force claim, which is not at issue here.

Immediately after this incident, Slater was sent to the Special Housing Unit ("SHU").  (Slater Dep., pp. 50, 51.)  Before being placed in his SHU cell, Slater was examined by Nurse Nicole Rasor.[3]  (Slater Dep., p. 51; Declaration of Jadow Rao ("Rao Decl."), Docket No. 30-6, ¶ 5.)  Slater maintains that he told Rasor that he had been assaulted and had a "big headache."  (Slater Dep., p. 52.)  Slater testified that he "really didn't say anything" to Rasor at the time, but he was also experiencing pain throughout his face, neck, back, and entire left arm and shoulder.  (Slater Dep., pp. 52, 54.)  Slater does not recall whether he was cut, and does not recall whether he needed to be washed or bandaged.  (Slater Dep., p. 53.)

Slater's medical records show that Rasor noted three contusions across his

---

[2] Slater has since been released from custody.

[3] Nurse Rasor is not named as a defendant in this action.

forehead, which Rasor cleaned. (Rao Decl., ¶ 5 and pp. 11-15.) They further note that Slater denied any pain or discomfort related to his forehead and declined Rasor's offers of pain relievers. (Rao Decl., ¶ 5 and pp. 11-15.) Slater, however, recalls that Rasor gave him Ibuprofen before she cleared him to enter his SHU cell. (Slater Dep., pp. 53, 60.)

After this examination, Slater recalls receiving an additional dose of Ibuprofen from an unidentified male nurse later that night or the next morning (February 11, 2011), after he complained of continuing pain. (Slater Dep., pp. 53, 60, 61.) The Ibuprofen, however, did not ease Slater's pain. (Slater Dep., pp. 60-62.) He therefore requested additional Ibuprofen or stronger medication on multiple occasions from several unidentified staff members. (Slater Dep., pp. 61-62, 66.) The medical records do not reflect this interaction.

After Slater had been in the SHU for a couple of days, an unidentified man came to visit him at his cell to inquire about his injuries. (Slater Dep., pp. 63-64.) Slater reported to this individual that his left hand was numb and that he was having difficulty grasping with his left hand. (Slater Dep., p. 63.) This individual performed several tests, including having Slater squeeze two of this individual's fingers, first with his left hand, then with his right. (Slater Dep., pp. 63-64.) There is no record of this alleged visit in Slater's medical file.

On February 21, 2011, Bonning saw Slater during morning sick call. (Declaration of Donna Bonning ("Bonning Decl."), Docket No. 30-4, ¶ 8; Rao Decl., p. 9.) She noted that Slater had continuing complaints of neck and back pain, and further reported

3

numbness in his left upper extremity. (Bonning Decl., ¶ 8.) Bonning determined that Slater was not in acute distress and was ambulating in his cell without difficulty. (Bonning Decl., ¶ 8.) Bonning further noted that Slater was already scheduled to see Rao, so she simply provided him Motrin for his pain. (Bonning Decl., ¶ 8.)

On March 1, 2011, Rao examined Slater. (Rao Decl., ¶ 8 and p. 8.) Rao noted Slater's complaints of ongoing neck pain and numbness in his left hand. (Rao Decl., ¶ 8.) He further noted that Slater was not in distress and that his speech and eye contact were good. (Rao Decl., ¶ 8.) Slater had full range of motion in his head and neck and his hand grip was equal and strong bilaterally. (Rao Decl., ¶ 8.) Rao recommended that Slater not exercise or lift for two or three weeks and he prescribed 400 milligrams of Motrin twice per day.[4] (Rao Decl., ¶ 8.)

Three days later, Abbasey examined Slater. (Declaration of Sallah Abbasey ("Abbasey Decl."), Docket No. 30-3, ¶ 6; Rao Decl., p. 10.) Abbasey noted that Slater presented no new complaints or problems, but he wanted a "medical diet," which Abbasey declined because there was no medical need for it. (Abbasey Decl., ¶ 6.) Abbasey also noted that Slater had asthma, but was experiencing no acute symptoms at that time. (Abbasey Decl., ¶ 6.)

On March 7, 2011, Nurse Cygan saw Slater in his cell, where he was standing

---

4 Slater testified at his deposition that he saw a physician for the first time approximately one week before he left for Upstate. (Slater Dep., pp. 65-66.) This physician, whom Slater could not identify, examined Slater to determine what was wrong with his shoulder and neck. (Slater Dep., pp. 65-67.) He also prescribed Slater more powerful pain medication. (Slater Dep., pp. 65, 67-68.) Slater could not identify the medication, but he recalled that he was prescribed "500 milligrams of something." (Slater Dep., p. 68.) From the medical records, it appears that Slater is most likely describing his March 1, 2011 examination by Rao. (Rao Decl., ¶ 8.)

without difficulty.[5] (Rao Decl., ¶ 10.) The record of that interaction indicates that Slater told Cygan that the Ibuprofen was not working for his neck and back pain and therefore he did not want it renewed. (Rao Decl., ¶ 10 and p. 7.)

The next day, Bonning saw Slater again at morning sick call. (Bonning Decl., ¶ 9; Rao Decl., p. 7.) She noted Slater's continued complaints of pain, but again found that he was in no acute distress and was moving without difficulty. (Bonning Decl., ¶ 9.) Slater also complained of constipation, which Bonning treated with a dose of milk of magnesia. (Bonning Decl., ¶ 9.) Bonning further directed Slater to return to sick call if the milk of magnesia did not provide relief. (Bonning Decl., ¶ 9.) She also told him to write to his medical provider concerning his neck pain. (Bonning Decl., ¶ 9.)

On March 10, 2011, Nurse Hawley saw Slater at morning sick call.[6] (Rao Decl., ¶ 12 and p. 7.) Hawley noted that Slater reported continuation of his pain, but resolution of his constipation. (Rao Decl., ¶ 12.) She refilled Slater's order for 400 milligrams of Motrin twice per day. (Rao Decl., ¶ 12.)

On March 11, 2011, Slater was transferred out of Attica to the Upstate Correctional Facility. (Slater Dep., pp. 64, 65, 70; Rao Decl., p. 10.)

### III. DISCUSSION

Cognizant of the distinct disadvantage that pro se litigants face, federal courts routinely read their submissions liberally and interpret them to raise the strongest

---

5  Nurse Cygan is not named as a defendant in this action.

6  Nurse Hawley is not named as a defendant in this action.

arguments that they suggest. See Haines v. Kerner, 404 U.S. 519, 520, 92 S. Ct. 594, 596, 30 L. Ed. 2d 652 (1972); Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994). This is especially important when reviewing pro se complaints alleging civil rights violations. See Weinstein v. Albright, 261 F.3d 127, 132 (2d Cir. 2001). Since Slater is proceeding pro se, this Court has considered his submissions and arguments accordingly.

**A.      Summary Judgment**

Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56 (a). A fact is "material" if it "might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). An issue of material fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.

In deciding a motion for summary judgment, the evidence and the inferences drawn from the evidence must be "viewed in the light most favorable to the party opposing the motion." Addickes v. S.H. Kress and Co., 398 U.S. 144, 158-59, 90 S. Ct.1598, 1609, 26 L. Ed. 2d 142 (1970). "Only when reasonable minds could not differ as to the import of evidence is summary judgment proper." Bryant v. Maffucci, 923 F.2d 979, 982 (2d Cir. 1991). Indeed, "[i]f, as to the issue on which summary judgment is sought, there is any evidence in the record from which a reasonable inference could be drawn in favor of the opposing party, summary judgment is improper." Sec. Ins. Co. of Hartford v. Old Dominion Freight Line, Inc., 391 F.3d 77, 82–83 (2d Cir. 2004) (citations omitted).

But a "mere scintilla of evidence" in favor of the nonmoving party will not defeat

summary judgment. Anderson, 477 U.S. at 252. A nonmoving party must do more than cast a "metaphysical doubt" as to the material facts; it must "offer some hard evidence showing that its version of the events is not wholly fanciful." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986); D'Amico v. City of N.Y., 132 F.3d 145, 149 (2d Cir. 1998). That is, there must be evidence from which the jury could reasonably find for the non-moving party. Anderson, 477 U.S. at 252.

As noted, "[i]t is well established that the submissions of a *pro se* litigant must be construed liberally and interpreted 'to raise the strongest arguments that they suggest.'" Triestman v. Fed. Bur. of Prisons, 470 F.3d 471, 474 (2d Cir. 2006) (quoting Pabon v. Wright, 459 F.3d 241, 248 (2d Cir. 2006)). "A *pro se* plaintiff, however, cannot defeat a motion for summary judgment by simply relying on the allegations of his complaint; he must present admissible evidence from which a reasonable jury could find in his favor." Belpasso v. Port Auth. of NY & NJ, 400 Fed. Appx. 600, 601 (2d Cir. 2010); see Champion v. Artuz, 76 F.3d 483, 485 (2d Cir. 1996) (summary judgment properly entered against *pro se* plaintiff who failed to oppose motion with admissible evidence after receiving plainly worded warning of the consequences of such failure).

In the end, the function of the court is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson, 477 U.S. at 249. "Assessments of credibility and choices between conflicting versions of the events are matters for the jury, not for the court on summary judgment." Rule v. Brine, Inc., 85 F.3d 1002, 1011 (2d Cir. 1996).

**B.    42 U.S.C. § 1983**: **Eighth Amendment Deliberate Indifference Claims**

Civil liability is imposed under 42 U.S.C. § 1983 only upon persons who, acting under color of state law, deprive an individual of rights, privileges, or immunities secured by the Constitution and laws.  See 42 U.S.C. § 1983.  On its own, § 1983 does not provide a source of substantive rights, but rather, a method for vindicating federal rights conferred elsewhere in the federal statutes and Constitution.  See Graham v. Connor, 490 U.S. 386, 393-94,109 S. Ct. 1865, 1870, 104 L. Ed. 2d 443 (1989) (quoting Baker v. McCollan, 443 U.S. 137, 145 n.3, 99 S. Ct. 2689, 2695, 61 L. Ed. 2d 433 (1979)).  Accordingly, as a threshold matter in reviewing claims brought under § 1983, it is necessary to precisely identify the constitutional violations alleged.  See Baker, 443 U.S. at 140.  Here, Slater's claims fall under the Eighth Amendment.

The Eighth Amendment, which applies to the States through the Fourteenth Amendment, "prohibits the infliction of 'cruel and unusual punishments' on those convicted of crimes."  Wilson v. Seiter, 501 U.S. 294, 297, 111 S. Ct. 2321, 2323, 115 L. Ed. 2d 271 (1991); U.S. Const. amend. VIII.  As such, prison conditions and the treatment prisoners receive while incarcerated are subject to scrutiny under the Eighth Amendment.  See DeShaney v. Winnebago County Dept. of Social Svcs., 489 U.S. 189, 199-200, 109 S. Ct. 998, 1005-1006, 103 L. Ed. 2d 249 (1989).

In addition, the Supreme Court has recognized that a prisoner's claim that he was intentionally denied medical treatment is cognizable under the Eighth Amendment and § 1983:

> We therefore conclude that deliberate indifference to serious
> medical needs of prisoners constitutes the unnecessary and

> wanton infliction of pain proscribed by the Eighth Amendment. This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed. Regardless of how evidenced, deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983.
>
> . . .
>
> In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs. It is only such indifference that can offend evolving standards of decency in violation of the Eighth Amendment.

Estelle v. Gamble, 429 U.S. 97, 104, 106, 97 S. Ct. 285, 291, 292, 50 L. Ed. 2d 25 (1976)(quotations and citations omitted).

"A claim of cruel and unusual punishment in violation of the Eighth Amendment has two components – one subjective, focusing on the defendant's motive for his conduct, and the other objective, focusing on the conduct's effect." Sims v. Artuz, 230 F.3d 14, 20 (2d Cir. 2000) (citing Hudson v. McMillian, 503 U.S. 1, 7-8, 112 S. Ct. 995, 999, 117 L. Ed. 2d 156 (1992); Blyden v. Mancusi, 186 F.3d 252, 262 (2d Cir. 1999)). With respect to a claim of deliberate indifference to a serious medical need, a prisoner must show that he suffered from a "sufficiently serious" medical condition, see Chance v. Armstrong, 143 F.3d 698, 702 (2d Cir. 1998), and that the defendants acted with a "sufficiently culpable state of mind," Hathaway v. Coughlin, 37 F.3d 63, 66 (2d Cir. 1994).

The subjective component "requires a showing that the defendant "had the necessary level of culpability, shown by actions characterized by 'wantonness' in light of the particular circumstances surrounding the challenged conduct." Sims, 230 F.3d at 21

(citations omitted).  The objective component is "contextual and responsive to contemporary standards of decency." Id. (quoting Hudson, 503 U.S. at 8).

> "An official acts with the requisite deliberate indifference when he 'knows of and disregards an excessive risk to inmate health or safety; the official must be both aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'"

Brown v. Picarelli, No. 96 Civ. 1222, 2003 WL 1906180, at *6 (S.D.N.Y. Apr. 15, 2003)(quoting Farmer, 511 U.S. at 837).

Slater alleges deliberate-indifference-to-medical-needs claims against Rao, Abbasey, and Bonning.  He testified at his deposition that the medical staff ignored his complaints of pain, told him he was fabricating his condition, and joked about his complaints.  (Slater Dep., p. 85, 99.)  He also maintains that Rao, Abbasey, and Bonning should have ordered specific medical tests, should have provided stronger medication, and should have referred him to a specialist.  (Declaration of Terrence Slater ("Slater Decl."), Docket No. 38, ¶¶ 10, 15, 17, 21.)

This Court has reviewed the motion papers, affidavits, and evidence submitted by the parties.  Based on that review, this Court finds that Slater has failed to demonstrate the existence of any genuine issue of material fact regarding his Eighth Amendment deliberate-indifference-to-medical-needs claims.  While there may exist some disputed issues of fact, particularly as it relates to what Slater told his medical providers, these issues do not preclude summary judgment because they are not material.[7]  Even viewing

---

7 Slater submitted a declaration in opposition to Defendants' motion that expands on and in some instances contradicts his deposition testimony.  (Docket No. 38.)  To the extent Slater contends that his declaration raises material issues of fact, he is mistaken.  The Second Circuit has held that "a party may not create an

the facts and evidence in Slater's favor, this Court finds that his claims fail.

First, Slater has failed to present competent evidence demonstrating that he suffered a sufficiently serious injury during the Use-of-Force incident. More than minor discomfort or injury is required to demonstrate a serious medical condition implicating the Eighth Amendment. See Evering v. Rielly, No. 98 CIV. 6718, 2001 WL 1150318, *9 (S.D.N.Y. Sept. 28, 2001). At best, Slater suffered a "big headache;" pain in his face, neck, back, and left arm; and numbness in his left arm and hand. (Slater Dep., pp. 52, 54, 63.) Although Slater now characterizes this pain as "worsening" and "unbearable," the medical records reveal that Slater suffered only three minor contusions across his forehead, which were cleaned and treated with over-the-counter pain medication. (Slater Decl., ¶¶ 9, 14; Rao Decl., ¶ 5 and pp. 11-15.) They further reveal that Slater never reported "unbearable" pain to any of his medical providers.[8]

The Second Circuit has set forth a number of factors to be considered when determining whether a serious medical condition exists. See Chance, 143 F.3d at 702. These factors include, but are not limited to, "the existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence

---

issue of fact by submitting an affidavit in opposition to a summary judgment motion that, by omission or addition, contradicts the affiant's previous deposition testimony." Hayes v. New York City Dept. of Corr., 84 F.3d 614, 619 (2d Cir. 1996). The reason for this rule is straightforward: "if a party who has been examined at length on deposition could raise an issue of fact simply by submitting an affidavit contradicting his own prior testimony, this would greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact." Id.

8 In his declaration, Slater contends that Defendants and other medical providers falsified his medical records by not accurately recording his complaints and minimizing his conditions. (Docket No. 38.) But Slater has presented no evidence to support this allegation, which is essentially a denial of Defendants' evidence. See Rexnord Holdings, Inc. v. Bidermann, 21 F.3d 522, 525-26 (2d Cir. 1994) ("mere allegations or denials" not enough to defeat summary judgment); Scotto v. Almenas, 143 F.3d 105, 114 (2d Cir. 1998) (conclusory allegations and unsubstantiated speculation cannot defeat summary judgment). In any event, the medical records are largely consistent with Slater's deposition testimony.

11

of a medical condition that significantly affects an individual's daily activities; or the existence of chronic or substantial pain." Chance, 143 F.3d at 702 (quoting McGuckin v. Smith, 974 F.2d 1050, 1059-60 (9th Cir. 1992) (citations omitted)).

There are numerous examples of injuries that courts have found to be too lacking in seriousness to raise Eighth Amendment concerns. See, e.g., Rivera v. Johnson, No. 95 CIV. 0845E(H), 1996 WL 549336 at *2 (W.D.N.Y. Sept. 20, 1996) (broken finger); Glasper v. Wilson, 559 F. Supp. 13 (W.D.N.Y. 1982) (lack of immediate medical attention for bowel problems); Sonds v. St. Barnabas Hosp. Corr. Health Servs., 151 F. Supp. 2d 303 (S.D.N.Y. 2001) (cut finger); Henderson v. Doe, No. 98 CIV. 5011, 1999 WL 378333 (S.D.N.Y. June 10, 1999) (broken finger); Gibson v. McEvers, 631 F.2d 95, 98 (7th Cir. 1980) (cold symptoms); Dickson v. Colman, 569 F.2d 1310 (5th Cir. 1978) (per curiam) (headaches); Tyler v. Rapone, 603 F. Supp. 268 (E.D.Pa. 1984) (toothache and cut).

There are also numerous examples of injuries found to be sufficiently serious to satisfy the Eighth Amendment standard. See Neitzke v. Williams, 490 U.S. 319, 109 S. Ct. 1827, 104 L. Ed. 2d 338 (1989) (brain tumor); Hathaway, 37 F.3d at 66 (two year delay in arranging hip surgery); Williams v. Vincent, 508 F.2d 541, 544 (2d Cir. 1974) (loss of an ear); Corby v. Convoy, 457 F.2d 251 (2d Cir. 1972) (serious nasal problem); Monmouth County Corr. Inst. Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987) (abortion); Griffin v. DeRobertis, 557 F. Supp 302, 306 (N.D.Ill. 1983) (spitting up blood).

The pain and discomfort Slater suffered as a result of the Use-of-Force incident falls into the former category of injuries that are not sufficiently serious to raise an Eighth Amendment claim. There is simply no suggestion in the record, let alone any evidence, that Slater suffered from an untreated medical condition that was "sufficiently serious, in

12

the sense that [it was] a condition of urgency, one that may produce death, degeneration, or extreme pain." Hemmings v. Gorczyk, 134 F.3d 104, 108 (2d Cir. 1998).

Second, even assuming that Slater could establish that he suffered a sufficiently serious injury such that he is able to meet the objective component of an Eighth Amendment claim, this Court finds that he cannot meet the subjective component, because there is absolutely no evidence that Rao, Abbasey, or Bonning acted wantonly. In fact, Plaintiff repeatedly admits in his deposition and his papers that he received medical treatment for his pain and injuries from each of the named defendants as well as other medical staff at Attica. And the record bears out that during the four weeks Slater was in Attica after the Use-of-Force incident, he was provided medical treatment on no less than 9 occasions by multiple providers, including Rao, Abbasey, and Bonning. (Rao Decl., ¶ 18.) Accordingly, it is undisputed that Rao, Abbasey, and Bonning treated Slater's injuries and medical conditions.

What Slater really contests is the specific medical treatment that he received, which was not to his liking. For example, Slater wanted stronger pain medication,[9] additional diagnostic testing, and a referral to a specialist. (Slater Decl., ¶¶ 10, 15, 17, 21.) None of this was medically indicated, but in any event, Slater is not entitled to dictate his own course of treatment. See Armstrong, 143 F.3d at 703 ("it is well-established that mere disagreement over the proper treatment does not create a constitutional claim. So long as the treatment given is adequate, the fact that a prisoner might prefer a different treatment does not give rise to an Eighth Amendment violation."). And even if the

---

9 It should be noted that Bonning, as a nurse, could not diagnose patients or prescribe medication. (Bonning Decl., ¶ 4.)

treatment provided fell below the applicable standard of care, "[a] showing of medical malpractice is . . . insufficient to support an Eighth Amendment claim." Hernandez v. Keane, 341 F.3d 137, 144 (2d Cir. 2003). Slater simply cannot demonstrate that Defendants, each of whom provided him adequate medical care, acted with a sufficiently culpable state of mind to meet the deliberate indifference standard. See Hathaway, 37 F.3d at 66.

Accordingly, for the reasons stated above, this Court finds that Defendants Rao, Abbasey, and Bonning are entitled to summary judgment on Slater's claims that they were each deliberately indifferent to his need for medical care in violation of the Eighth Amendment.

## IV. CONCLUSION

For the reasons stated above, Defendants Rao, Abbasey, and Bonning are entitled to summary judgment on Slater's deliberate-indifference-to-medical-needs claims. Their motion for summary judgment is therefore granted.

## V. ORDERS

IT HEREBY IS ORDERED, that Defendants' Motion for Partial Summary Judgment (Docket No. 30) is GRANTED.

FURTHER, that the Clerk of Court is directed to terminate Defendants Rao, Abbasey, and Bonning as defendants in this action.

SO ORDERED.

Dated: January 12, 2018
       Buffalo, New York

                                                /s/William M. Skretny
                                                WILLIAM M. SKRETNY
                                                United States District Judge