UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

TERRENCE SLATER,

     v.                                             **DECISION AND ORDER**
                                                              13-CV-1079S

J. LACAPRUCCIA and M. ANTIMORE,

                        Defendants.

## I. INTRODUCTION

This is a federal civil rights action brought under 42 U.S.C. § 1983. Plaintiff Terrence Slater, a former inmate at the Attica Correctional Facility, alleges that Attica Corrections Officers Jeffrey Lacapruccia and Mark Antinore assaulted him on February 10, 2011, in violation of his Eighth Amendment right to be free from cruel and unusual punishment. Plaintiff alleges that Defendants assaulted him as he was moving to the recreation yard, leaving him with injuries and pain in his left shoulder, back, and neck. Defendants deny assaulting Plaintiff and instead maintain that they applied force only in a good faith effort to maintain order after Slater first struck Defendant Lacapruccia. Trial is scheduled to commence on April 30, 2019.

Presently before this Court is that portion of Slater's motion in limine seeking an adverse inference instruction as a sanction for Defendants' spoliation of evidence. (Docket No. 76.) In particular, Slater maintains that Defendants, through the New York State Department of Corrections and Community Supervision ("DOCCS"), destroyed the audio recording of the inmate disciplinary hearing that resulted from the incident at issue. This Court held a hearing concerning Slater's motion on April 16, 2019, at which four

1

witnesses (including both defendants) testified. For the reasons discussed below, Slater's request for an adverse inference instruction is denied.

## II. FACTS

### A. Stipulated Facts

The parties stipulated to the following facts. (Docket No. 86.)

A use-of-force incident occurred between Slater and Defendants at the Attica Correctional Facility on February 10, 2011. As a result of that incident, Slater was issued a Misbehavior Report (Exhibit 2), which subsequently became the subject of an inmate disciplinary hearing conducted by Captain Chris Robinson between February 15 and 23, 2011. At that hearing, which Captain Robinson audio-recorded, Slater and Defendants testified and provided their competing versions of the use-of-force incident.

On October 28, 2013, Slater filed this civil rights action. Defendants filed their answer on February 14, 2014. About two months later, on April 3, 2014, the audiotape of the disciplinary hearing before Captain Robinson was transcribed (Exhibit 3). Portions of the transcript, however, are incomplete. Slater received a copy of the transcript during discovery, but he did not request the physical audiotape of the proceedings during the discovery period while he was proceeding pro se.

On October 12, 2018, this Court assigned counsel to represent Slater for trial. When counsel requested the audiotape from Defendants, DOCCS informed Defendants' counsel that the tape had been destroyed.

## B. Hearing Evidence

### 1. Defendant Lacapruccia

Defendant Lacapruccia recalls the use-of-force incident involving Slater and the subsequent disciplinary hearing. He testified at the disciplinary hearing and provided truthful and complete answers. He was present at the hearing with Slater and Captain Robinson. Captain Robinson audio-recorded the hearing.

Defendant Lacapruccia testified that he had no involvement in the gathering or preservation of evidence in this lawsuit. He does not recall receiving the complaint. He did not retain counsel. He did not discuss this lawsuit with anyone, including Defendant Antinore. He did not preserve any evidence or request that evidence be preserved. He did not participate in discovery, and he did not know that the audiotape of the disciplinary hearing was transcribed until the time of the spoliation hearing. He also testified that he is not familiar with DOCCS directives concerning the preservation of evidence.

Defendant Lacapruccia left Attica in December 2015 and was not working there in 2016. He has no knowledge of where disciplinary hearing audiotapes are stored at Attica or what happened to the audiotape in this case. He denies destroying the audiotape of Slater's disciplinary hearing.

### 2. Defendant Antinore

Defendant Antinore recalls the use-of-force incident involving Slater and the subsequent disciplinary hearing. He testified at the disciplinary hearing and told the truth. Captain Robinson audio-recorded the hearing. Defendant Antinore had no relationship with Captain Robinson beyond being co-workers.

Defendant Antinore does not recall what he did when he received the complaint in this case but does recall submitting an answer. He did not contact anyone at Attica or retain a lawyer nor did he speak to anyone about the case. Although he knew that an audiotape of the hearing existed, he had no involvement in the gathering or preservation of evidence in this lawsuit and did not preserve any evidence or request that evidence be preserved. He did not participate in discovery, and he did not know that the disciplinary hearing was transcribed until the time of the spoliation hearing. He is not familiar with DOCCS directives concerning the preservation of evidence, describing them as "above his pay grade."

Defendant Antinore left Attica in 2012. At that time, he did not advise anyone at Attica that the disciplinary hearing took place, that it was recorded, or that an audiotape existed. He has no knowledge of where disciplinary hearing audiotapes are stored at Attica or what happened to the audiotape in this case. He denies destroying the audiotape of Slater's disciplinary hearing.

### 3. Susanne Diebold

Susanne Diebold was an office assistant employed by DOCCS until she retired in June 2016. As relevant here, Diebold's duties included transcribing disciplinary hearing audiotapes, though she is not a trained stenographer. Diebold testified that audiotapes of disciplinary hearings are transcribed as a matter of course by a staff of two or three office assistants, and that she transcribed thousands of audiotapes during her tenure at DOCCS, including the one at issue here.

Reviewing the transcript (Exhibit 3), Diebold testified that blank spaces or a series

of dashes in the transcript indicate inaudible content on the audiotape. Diebold testified that there are no procedures in place for addressing inaudible content and that the office assistants are simply instructed to do the best they can to transcribe hearing tapes. Beyond the initial effort made by the office assistant, no one reviews audiotapes or portions of audiotapes that are identified as inaudible. Diebold explained that the office assistants repeatedly complained about the quality of the audiotapes and the difficulties they had transcribing them—including poor audio quality, background noise on the tapes, and noise in the office where the transcriptions were done—but DOCCS never took any action to address these issues.

Diebold testified that when an audiotape was transcribed, the transcript was sent to whomever requested it and the audiotape was placed in a box for eventual transport to the disciplinary office to be stored. When the box filled, an office assistant would walk it to the disciplinary office. When Diebold walked tapes to the disciplinary office, she would tell the office assistants working in that office if there were audibility issues with the tapes. Corrections Officers, however, were not informed of any audibility issues.

Diebold testified that she transcribed the audiotape of Slater's disciplinary hearing to the best of her ability and did not intentionally omit any audible content. She further testified that she had no role in destroying the audiotape.

**4. Daniel Leonard**

Daniel Leonard is a Lieutenant Corrections Officer and Acting Captain employed by DOCCS at Attica. He testified that all Tier III hearings, such as the one at issue involving Slater, are conducted by a Captain and audio-recorded. The audiotapes of

5

disciplinary hearings are stored in a secured cabinet in the disciplinary office. Only limited access is provided to the secured cabinet, which has a log book to record the movement of audiotapes. Corrections Officers do not have access to the cabinet, nor do they have access to audiotapes to preserve or destroy them.

Leonard testified about DOCCS Directive 2011 (Exhibit 5), which pertains to the retention of audiotapes. Under that Directive, audiotapes are retained for five years from the date of the hearing and then destroyed. Audiotapes are destroyed twice per year, in January and June. Notice is sent before the audiotapes are taken to the Wyoming Correctional Facility, where they are destroyed in a large compactor. The staff in the disciplinary office determines which audiotapes should be destroyed under Directive 2011.

As it pertains to the audiotape at issue here, Leonard testified that it would likely have been destroyed in June 2016 under Directive 2011, since the hearing took place more than five years earlier, in February 2011. Leonard stated that he does not, however, know when the tapes at issue actually were destroyed. And he also testified that no records are kept concerning the destruction of audiotapes under Directive 2011.

On cross-examination, Leonard conceded that Directive 2011 has a pending-litigation exception to the 5-year retention policy: the default 5-year retention policy does not apply if evidence relates to pending litigation. In such a case, DOCCS must continue to retain the evidence. Moreover, Leonard testified that the pending-litigation exception does not require that a party request evidence for the exception to apply. He also conceded that the audiotape of Slater's hearing was destroyed during the pendency of
6

this lawsuit.

## III. DISCUSSION

Slater maintains that the transcript of his disciplinary hearing contains numerous gaps that he cannot compare to the audiotape because DOCCS destroyed it. He maintains that he has lost the opportunity to both determine whether the omitted testimony was truly inaudible and assess whether the testimony would be favorable to his case. He maintains that because DOCCS violated its own Directive concerning the retention of evidence relevant to ongoing litigation, he is entitled to an adverse inference instruction. Defendants oppose the request on the basis that the individual defendants did not have control over the evidence and Slater never requested the audiotapes during discovery.

Spoliation is "the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." Taylor v. City of New York, 293 F.R.D. 601, 609 (S.D.N.Y. 2013) (quoting West v. Goodyear Tire & Rubber Co., 167 F.3d 776, 779 (2d Cir. 1999)). Courts have "broad discretion" in deciding whether and how to sanction parties for spoliation of evidence. West, 167 F.3d at 779; Fujitsu Ltd. v. Fed. Express Corp., 247 F.3d 423, 436 (2d Cir. 2001). Any sanction, however, must be "molded to serve the prophylactic, punitive, and remedial rationales underlying the spoliation doctrine." West, 167 F.2d at 779.

A party seeking sanctions for spoliation of evidence bears the burden of establishing three elements: "(1) that the party having control over the evidence had an

obligation to preserve it at the time it was destroyed; (2) that the records were destroyed 'with a culpable state of mind;' and (3) that the destroyed evidence was 'relevant' to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense." Residential Funding Corp. v. DeGeorge Fin. Corp., 306 F.3d 99, 107 (2d Cir. 2002) (citation omitted). Slater failed to establish each of these elements.

### A. Slater established that Defendants had an obligation to preserve the audiotape at the time it was destroyed.

Section I (D)(2)(b) of DOCCS Directive 2011 provides that records relating to legal actions "must be kept until the . . . legal action ends, even if their minimum retention period has passed." (Exhibit 5.) By its plain terms, this Directive obligated DOCCS to retain the audiotape of Slater's hearing, because there is no dispute that the audiotape was destroyed *after* Slater instituted this action.

Defendants argue that they had no control over or involvement in the destruction of the audiotape and therefore no duty to preserve it. As this Court previously indicated, however, it concurs in the pronouncements by other members of this court that in suits against individual corrections officers employed by DOCCS where DOCCS is not a defendant, a sufficiently close relationship nonetheless exists to impute DOCCS' control over evidence to the individual officers. See, e.g., Wilson v. Hauck, 141 F. Supp. 3d 226, 229 (W.D.N.Y. 2015) (Wolford, J.) ("the relationship between DOCCS and its employees is sufficiently closely coordinated to find that DOCCS employees have control over evidence held by DOCCS"); Guillory v. Skelly, No. 12-CV-847S, 2014 WL 4542468, at *8 (W.D.N.Y. Sept. 11, 2014) (Foschio, M.J.); Vigliotti v. Selsky, No. 08-CV-875M, 2013

WL 3354423, at *4 (W.D.N.Y. July 3, 2013) (McCarthy, M.J.); see also In re NTL, Inc. Sec. Litig., 244 F.R.D. 179, 195 (S.D.N.Y. 2007) ("[D]ocuments are considered to be under a party's control when that party has the right, authority, or practical ability to obtain the documents from a non-party to the action.")

Defendants next argue that Slater never requested the audiotapes in discovery. Leonard conceded at the hearing, however, that a request for a particular piece of evidence is not necessary to trigger the retention obligations in DOCCS Directive 2011. Moreover, this argument ignores Slater's status as a pro se litigant at that time and the special solicitude that accompanies that status.

Accordingly, this Court finds that Slater sufficiently established that Defendants had an obligation to preserve the audiotape at the time it was destroyed.

### B. Slater established that Defendants destroyed the audiotape with a sufficiently culpable state of mind.

To establish a sufficiently culpable state of mind, the party seeking sanctions must establish at least negligence. See Zubulake v. UBS Warburg LLC, 220 F.R.D. 212, 220 (S.D.N.Y. 2003) (finding that required culpable state of mind includes negligence). One way to do so is to demonstrate that the opposing party failed to implement a litigation hold. See Richard Green (Fine Paintings) v. McClendon, 262 F.R.D. 284, 291 (S.D.N.Y. 2009) ("[T]he failure to implement a litigation hold is, by itself, considered grossly negligent behavior."); see also Zubulake v. UBS Warburg LLC, 220 F.R.D. 212, 220 (S.D.N.Y. 2003) ("Once the duty to preserve attaches, any destruction of documents is, at a minimum, negligent.").

Here, although Slater did not fully explore the mechanisms by which DOCCS implements its evidence-retention and evidence-disposal policies under Directive 2011 or otherwise, he established that DOCCS should have placed the equivalent of a litigation hold on the audiotape as evidence related to a legal action under Directive 2011. Though not specifically drawn out at the hearing, DOCCS' either placed a litigation hold on the audiotape and failed to abide by it, or it simply failed to place a litigation hold on the audiotape in the first instance. Either way, DOCCS' negligence is evidenced by its admission that it destroyed the audiotape during the pendency of this litigation in contravention of Directive 2011. Accordingly, this Court finds that Slater established that Defendants destroyed the audiotape with a sufficiently culpable state of mind, that is, negligently.

### C. Slater failed to establish that the audiotape would have supported his claims against Defendants.

A party moving for sanctions must show that "the destroyed evidence was relevant to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense." Residential Funding, 306 F.3d at 107. In this context, the test for relevance is more than what is necessary to find relevance under Rule 401 of the Federal Rules of Evidence. Id. at 108-109. To establish relevance for spoliation purposes, the moving party must produce evidence from which a reasonable trier of fact could infer that the destroyed or unavailable evidence would have been favorable to its case. See Taylor, 293 F.R.D. at 613 ("the party moving for sanctions bears the burden of establishing that the destroyed evidence would have been favorable to his claims")

(citing Residential Funding, 306 F.3d at 109).

To meet this burden, Slater would have to demonstrate that the audiotape contained information that would be favorable to his case. He did not do so. The only testimony concerning the contents of the audiotape was presented through Diebold, who testified that she transcribed the audiotape to the best of her ability and that she did not omit any audible portions of the hearing. She further testified that those portions of the audiotape not transcribed—reflected as blanks or a series of dashes in the transcript— were not transcribed because they were inaudible, and for no other reason. An audiotape containing inaudible material is not favorable to a party's case.

Nonetheless, Slater maintains that he has been denied the opportunity to listen to the audiotape himself to determine its audibility. He contends that it could contain inconsistent testimony, untruthful statements, or admissions by Defendants. But given the unchallenged testimony that the missing portions of the transcript reflect inaudibility and were not intentionally omitted, this Court finds Slater's lost-opportunity arguments too speculative to carry his burden. Accordingly, this Court finds that Slater failed to establish that the audiotape would have supported his claims against Defendants.

## IV. CONCLUSION

For the reasons stated above, this Court finds that Slater is not entitled to an adverse inference instruction on spoliation of evidence grounds. That portion of his motion in limine seeking such relief will therefore be denied.

## V. ORDERS

IT HEREBY IS ORDERED, that Plaintiff's Motion in Limine seeking an adverse inference instruction (Docket No. 76) is DENIED.


Dated: April 18, 2019
       Buffalo, New York

                                            /s/William M. Skretny
                                            WILLIAM M. SKRETNY
                                            United States District Judge